# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————

NORTH RIVER INSURANCE COMPANY,

*Plaintiff and Appellant,*

v.

JAMES RIVER INSURANCE COMPANY,

*Defendant and Appellee.*

————————

Appeal from the United States District Court
Central District of California
Case No. 23-cv-00027-PSG-E
Hon. Philip S. Gutierrez

————————

## APPELLEE JAMES RIVER INSURANCE COMPANY'S ANSWERING BRIEF

————————

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Jeffrey V. Commisso
*jcommisso@sheppardmullin.com*

Benjamin D. Brooks
*bbrooks@sheppardmullin.com*

John T. Brooks
*jbrooks@sheppardmullin.com*

501 West Broadway, 18th Floor
San Diego, CA 92101

Telephone: 619.338.6500

*Attorneys for Defendant and Appellee James River Insurance Company.*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee James River

Insurance Company certifies that it is a wholly owned subsidiary of James River

Group Holdings, Ltd., a Bermuda-based insurance holding company.  No

shareholder owns more than 10% of James River Group Holdings, Ltd.'s stock.


Dated: February 5, 2023     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By       _s/ Jeffrey V. Commisso_
           JEFFREY V. COMMISSO
           BENJAMIN D. BROOKS
           JOHN T. BROOKS
           Attorneys for Defendant and Appellee
           James River Insurance Company

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................................................................................1

II. ISSUES PRESENTED ..........................................................................3

III. STATEMENT OF THE CASE.............................................................4

      A.    North River's allegations about the underlying case and its complaint for equitable subrogation.......................................4

      B.    The District Court dismissed North River's complaint with prejudice; Nevada law doesn't permit subrogation claims if the underlying case settles within limits ....................................6

IV. SUMMARY OF ARGUMENT ............................................................8

V. ARGUMENT ........................................................................................10

      A.    Nevada law applies; California has no connection to this dispute....................................................................................10

      B.    The District Court correctly predicted that Nevada would hold that North River can't state a claim for relief. ...................19

      C.    North River can't escape *St. Paul* and *Aspen Specialty*. .....................22

      D.    North River can't state a claim under California law either ..............25

VI. CONCLUSION....................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

<u>Federal Cases</u>

*Arno v. Club Med Inc.*
  22 F.3d 1464 (9th Cir. 1994) ..............................................................................10

*Capitol Specialty Ins. Corp. v. GEICO General Ins. Co.*
  562 F. Supp. 3d 563 (C.D. Cal. 2021) ..........................................................25, 26

*Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*
  472 F. Supp. 2d 1183 (S.D. Cal. 2007)..............................................................11

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*
  63 F.4th 747 (9th Cir. 2023) .................................................................................4

*James River Ins. Co. v. Medolac Labs.*
  290 F. Supp. 3d 956 (C.D. Cal. Feb. 22, 2018)..................................................18

*Medina v. Harco National Insurance Co.*
  No. 15-cv-05595, 2016 WL 7647680, at *9 (C.D. Cal. July 29, 2016). ............17

*Murray v. BEJ Mins., LLC*
  924 F.3d 1070 (9th Cir. 2019) ............................................................................20

*Ticknor v. Choice Hotels Int'l, Inc.*
  265 F.3d 931 (9th Cir. 2001) ........................................................................10, 13

*Zurich Am. Ins. Co. v. Aspen Specialty Ins. Co.*
  No. 20-cv-01374, 2021 WL 3489713 (D. Nev. Aug. 6, 2021) ..........................21

<u>State Cases</u>

*Ace Am. Ins. Co. v. Fireman's Fund Ins. Co.*
  2 Cal. App. 5th 159 (2016) ........................................................................9, 11, 13

*Arguello v. Sunset Station, Inc.*
  127 Nev. 365 (2011) ............................................................................................20

*Aspen Specialty Ins. Co. v. Eighth Jud. Dist. Ct.*
  528 P.3d 287, 2023 WL 3185274 (Nev. Apr. 28, 2023) ..............................passim

*AT & T Techs., Inc. v. Reid*
109 Nev. 592 (1993) ........................................................................19

*Fed. Ins. Co. v. Travelers Cas. & Surety Co.*
843 So. 2d 140 (Ala. 2002)..............................................................23

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*
65 Cal. App. 4th 1279 (1998) ....................................................25, 26

*Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc.*
52 Cal. App. 4th 553 (1997) ............................................................26

*In re Fontainebleau Las Vegas Holdings*
289 P.3d 1199 (Nev. 2012) (en banc)...............................................19

*Frontier Oil Corp. v. RLI Ins. Co.*
153 Cal. App. 4th 1436 (2007) ........................................................18

*Gitano Grp., Inc. v. Kemper Grp.*
26 Cal. App. 4th 49 (1994) ..............................................................18

*Pat. Scaffolding Co. v. William Simpson Const. Co.*
256 Cal. App. 2d 506 (1967) ...........................................................26

*Scottsdale Ins. Co. v. Liberty Mut. Ins. Co.*
130 Nev. 1241, 2014 WL 7188790 (Nev. 2014)..............................20

*St. Paul Fire & Marine Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*
521 P.3d 418, 2022 WL 17543613 (Nev. Dec. 8, 2022)............................passim

*State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A.*
143 Cal. App. 4th 1098 (2006) ........................................................26

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*
14 Cal. App. 4th 637 (1993) ......................................................16, 18

*Teigen v. Jelco of Wisconsin, Inc.*
367 N.W.2d 806 (Wis. 1985)...........................................................23

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rule of Civil Procedure
Rule 12(b)(6)...............................................................................4, 6

State: Statutes, Rules, Regulations, Constitutional Provisions

California Civil Code
  § 1646........................................................................................................18, 19

California Insurance Code
  § 22...............................................................................................................18

Nevada Rule of Appellate Procedure
  36................................................................................................................7, 13

# I. INTRODUCTION

In 2017, Marcus Collins was murdered inside a Las Vegas, Nevada apartment. Mr. Collins' heirs sued the apartment complex, Alhambra Place Partnership dba Shelter Island, for negligent security in Nevada state court. Alhambra Place tendered its defense to James River Insurance Company, who had issued a $1 million primary liability insurance policy covering it and several sister companies. Shelter Island also tendered the claim to North River Insurance Company, who insured it under a $10 million excess liability policy.

The wrongful death case ultimately settled for $5 million. James River paid its $1 million limit; North River paid $4 million. Alhambra Place didn't contribute any money to the settlement.

Now North River seeks to recoup is insurance payment from James River. Its theory is that James River should have settled the case earlier and for less than $1 million, that Alhambra Place could have sued James River for bad faith, and that North River stands in Alhambra Place's shoes as its subrogee.

But Nevada law is clear. Under circumstances like these, North River doesn't have a claim. The wrongful death case settled within the insurance companies' combined policy limits, Alhambra Place wasn't damaged, so there is no underlying claim for North River to be subrogated to. The Nevada Supreme Court held this in unpublished decisions handed down in December 2022 and April

2023, which are the only Nevada Supreme Court decisions to address the issue. Although the Supreme Court issued its decisions as "unpublished," its rules provide that this makes the decisions persuasive.

The district court found the Nevada Supreme Court's prior decisions on this issue persuasive and dismissed North River's complaint with prejudice.

Here, North River asks the Court to apply California law to this dispute, but its argument asserts that Alhambra Pace is a "California insured." That's incorrect. North River's complaint and the complaint from the wrongful death suit attached to it allege (correctly) that Alhambra Place is a Nevada insured.

North River also argues that if the Court applies Nevada law, the Court should ignore the Nevada Supreme Court's two decisions on this issue and assume that Nevada would just follow California law. But the best prediction of how the Nevada Supreme Court would decide this issue in this action is how it already decided it. Twice.

In short, the district court correctly decided that Nevada law applies; correctly decided that Nevada would not recognize North River's claim because there is no underlying claim to be subrogated to; and correctly dismissed the action. The Court should affirm.

## II.    ISSUES PRESENTED

1.     A Nevada partnership that operates a Nevada apartment complex was sued for wrongful death in Nevada because a Nevada resident was murdered in one of the apartments.  Does Nevada law apply to an equitable subrogation claim based on the primary carrier's conduct in settling the wrongful death suit?

2.     In 2022 and 2023 the Nevada Supreme Court held that there can be no equitable subrogation claim between insurance companies based on the defendant's alleged failure to settle within its own limits if the underlying case settled within the companies' combined limits.  The Court reasoned that an in-limits settlement protects the insured from damages, such that the insured has no bad-faith claim, and there is thus no derivative claim for equitable subrogation. The Nevada Supreme Court's rules make these decisions persuasive, but not strictly binding.  In this case, North River alleged that the underlying wrongful death lawsuit against the parties' mutual insured settled within the parties' combined policy limits.  Would the Nevada Supreme Court decide this action consistent with is prior decisions?

# III. STATEMENT OF THE CASE

## A. North River's allegations about the underlying case and its complaint for equitable subrogation

In January 2023, North River sued James River as Alhambra Place's subrogee. The district court dismissed the action under Rule 12(b)(6). Here are the allegations material to this appeal:

1. "ALHAMBRA PLACE PARTNERSHIP, LP, is and, at all times relevant hereto, was a Nevada limited partnership, who is licensed and conducting business as SHELTER ISLAND APARTMENTS . . . , an apartment complex in Clark County, Nevada." (ER-102 at ¶ 8; *see also* ER-102 at ¶ 8; ER-19; ER-92 at ¶ 5; ER-103 at ¶ 11, ER-104 at ¶ 12.)

2. Alhambra Place was a Named Insured on a James River primary policy with liability limits of $1 million. (ER-93 at ¶¶ 7–8; ER-63 (James River Policy Endorsement including Alhambra Place as a Named Insured).)[1]

3. Alhambra Place was a Named Insured on North River's excess policy, which had a $10 million liability limit. (ER-93 ¶¶ 10–11.)

4. In May 2017, multiple assailants tortured and killed Marcus Collis inside one of Alhambra Place's Shelter Island apartments. (ER-104 at ¶¶ 13–14;

---

[1] The Court may consider the James River Policy at the pleading stage because North River incorporated it by reference into the complaint. *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 763 (9th Cir. 2023); (*see* ER-93 at ¶¶ 7–9.)

ER-92 at ¶ 6.)  Collins' Estate was established in Nevada.  (ER-102 at ¶ 4.)  His

heirs included Keesha Davis who was a Nevada citizen.  (ER-102 at ¶¶ 3–4.)

5.      Five or six months after Collins' murder, counsel for Collins'

daughter and her mother submitted a negligent security claim to Alhambra Place,

Alhambra Place tendered the claim to James River, and James River immediately

hired defense counsel to defend Alhambra Place.  (*See* ER-94 at ¶¶ 12–13.)

6.      In March 2019, Collins' Estate and heirs sued Alhambra Place in

Nevada state court for wrongful death because of Collins' murder.  (ER-92 at ¶ 6,

ER-101–108.)  Shortly thereafter they demanded $1 million (or the available limits

of Defendant's applicable insurance, whichever is greater — effectively an

$11 million demand).  (*See* ER-92 at ¶ 6; ER-95 at ¶ 21.)  James River did not

offer to settle the case in response.

7.      After years of litigation, Collins' heirs made progressively lower

settlement demands.  (ER-95 at ¶¶ 22–23.)  James River did not accept these

demands because it evaluated the case as one of no liability with a settlement value

far less than what the plaintiffs demanded.  (*See* ER-95–96 at ¶¶ 22–25.)

8.      By September 2022, James River reevaluated the case (including

based on discovery efforts up to that date) and decided to offer its $1 million

towards settlement of the case.  (*See* ER-96 at ¶ 29.)  Two months later, the

wrongful death plaintiffs agreed to settle the case for $5 million.  (*See* ER-96 at

¶ 30.)  James River paid its $1 million primary limits, and North River contributed

$4 million of its $10 million excess limits.  (*See* ER-30 at ¶¶ 29–30.)  The

settlement was thus within Alhambra Place's $11 million combined limits.

Alhambra Place did not contribute to the settlement.  (*See* ER 96 at ¶¶ 29–30.)


**B.**   **The District Court dismissed North River's complaint with prejudice; Nevada law doesn't permit subrogation claims if the underlying case settles within limits**

In June 2023, James River moved to dismiss this action under Federal Rule

of Civil Procedure 12(b)(6) for failure to state a claim.  (SER-32–44.)  On August

4, 2023, the district court granted James River's motion.  (ER-3–12.)

The district court held that Nevada law applies to this dispute under

California's governmental interest choice-of-law test because Nevada and

California law materially conflict, and "nothing shows that California has an

interest in having its laws applied in this action," whereas Nevada has a strong

interest in having its law apply to this case.  (ER-8–9.)  The district court also held

that Nevada law applies based on California's statutory choice-of-law test for

contract claims, which applies the law of the place of performance.  (ER-6–7.)

Although there is no "published" Nevada authority addressing whether and

under what circumstances an insurer can state an equitable subrogation claim

against another insurer, the district court found two recent unpublished Nevada Supreme Court decisions predictive of how Nevada would resolve this case.

The first case was *St. Paul*, which involved claims by one excess carrier against another excess carrier.[2]  The second case was *Aspen Specialty*, which involved claims by an excess carrier against a primary carrier.[3]  In both cases, the insurers settled claims against their mutual insureds within the combined insurance policy limits, and the plaintiff insurer sought to recover its contribution to the settlement.  As a matter of first impression, the Nevada Supreme Court decided that the plaintiff could not state an equitable subrogation claim because equitable subrogation is derivative; the in-limits settlement protected the insured so that the insured suffered no damages; and, thus, there was no underlying claim to be subrogated to.  Under the Nevada Supreme Court's rules, the decisions are persuasive authority, though not binding.  *See* Nevada Rule of App. Proc. 36 (Nevada Supreme Court decisions citable for persuasive value).

The district court thus predicted that the Nevada Supreme Court would remain consistent and conclude that because the wrongful death case against Alhambra Place settled within the combined limits with no contribution from

---

[2] *St. Paul Fire & Marine Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 521 P.3d 418, 2022 WL 17543613 (Nev. Dec. 8, 2022)
[3] *Aspen Specialty Ins. Co. v. Eighth Jud. Dist. Ct.*, 528 P.3d 287, 2023 WL 3185274 (Nev. Apr. 28, 2023)

Alhambra Place, Alhambra Place did not suffer any damages, and therefore there is there is no underlying claim for North River to be subrogated to. (ER-10–12.) The district court found that amendment would be futile and dismissed the complaint with prejudice. (ER-12.)

## IV.   SUMMARY OF ARGUMENT

The district court dismissed the action for failure to state a claim because, based on the facts alleged, James River and North River's mutual insured Alhambra Place did not suffer any damages in the underlying Nevada case so there is no claim for North River to be subrogated to. Consequently, on appeal North River's allegations take center stage.

North River's complaint alleged: (1) Alhambra Place is a Nevada limited partnership that operated the Shelter Island Apartment complex in Las Vegas, Nevada. (2) James River insured Alhambra Place, LP, under a $1 million primary liability policy. (3) North River insured Alhambra Place under a $10 million excess liability policy. (4) A Nevada resident was murdered inside one of Alhambra Place's Shelter Island apartments, and Alhambra Place was sued for wrongful death. (5) James River had a chance to settle the case for less than $1 million but didn't do so. (6) Later, the case settled for $5 million: James River contributed $1 million, and North River contributed $4 million. (7) Alhambra Place had a claim against James River for its earlier decision not to settled for less

than $1 million that North River is now subrogated to.  (8) Standing in Alhambra Place's shoes, North River should get its $4 million from James River.

Despite the connections to Nevada, North River filed this action in California.  Maybe that's because California lets excess insurers bring failure-to-settle subrogation claims against primary insurers — even if the insured did not suffer any monetary loss.  *See Ace Am. Ins. Co. v. Fireman's Fund Ins. Co.*, 2 Cal. App. 5th 159, 170 (2016).  Nevada, however, does not.  Instead, if a case settles within the insured's combined limits (protecting the insured from any loss), the excess insurer has no subrogation claim.  *See Aspen Specialty*, 528 P.3d 287, 2023 WL 3185274; *St. Paul*, 521 P.3rd 418, 2022 WL 17543613.  The problem for North River is that no matter where it filed suit, Nevada law applies.  So the district court (correctly) applied Nevada law and (correctly) concluded that North River had not stated and could not amend to state a claim.

Here North River argues that the district court should have picked California law because Alhambra Place is a "California insured."  This is incorrect.  North River's complaint alleges that Alhambra Place is a Nevada company operating a Nevada apartment complex that was sued for the wrongful death of a Nevada resident in Nevada court.  The only connection to California is that James River's policy was issued to several Named Insureds, one of which has a California-ish

name and address. But North River's complaint doesn't contain a single allegation to connect that company to this case.

North River also says that the district court should have picked California law because there's "no material conflict" between California law and Nevada law. But to agree that there's no conflict between Nevada and California on the point of law at issue, one must either (i) ignore that the Nevada Supreme Court has — twice in the last two years — held that an excess insurer cannot bring an equitable subrogation claim against a primary carrier if the underlying case settles with the carriers' combined limits; or (ii) agree with North River that the Nevada Supreme Court somehow "misconstrued" Nevada law. The former is prohibited by the rule that federal courts are bound by the pronouncements of the state's highest court on state law. *See Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). The latter is impossible.

The Court should affirm the order dismissing this action.

## V.    ARGUMENT

### A.    Nevada law applies; California has no connection to this dispute.

Federal Courts sitting in diversity apply the choice-of-law rules of the forum state. Consequently, California's choice-of-law rules apply. California has two choice-of-law tests: the government-interest test and a statutory test for cases arising out of contract. *See, e.g.*, *Arno v. Club Med Inc.*, 22 F.3d 1464, 1469 n.6

(9th Cir. 1994); *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1197 (S.D. Cal. 2007) (applying both tests in insurance case). Under either test, Nevada law applies.

**1.     Under the government-interest test Nevada law applies.**

The threshold question for California's government-interest test is whether there is a genuine conflict between the competing states' laws. If so, the Court will consider which state has the stronger interest in its law applying. If not, then the Court will apply the law of the forum state.

**(a)     The conflict is that Nevada prohibits suits like this but California permits them.**

Under Nevada law, if the underlying claim settled within the combined policy limits so that the insured suffered no damages, there is no claim for the excess carrier to be subrogated to. California law is the opposite:

| Nevada | California |
|---|---|
| An excess insurer *cannot* establish an equitable subrogation claim against primary insurer where the underlying case settled within combined policy limits. | An excess insurer *can* pursue an equitable subrogation claim against primary insurer even if underlying case settled within combined policy limits. |
| *Aspen Specialty*, 528 P.3d 287, 2023 WL 3185274, at *2; *see also St. Paul*, 521 P.3d 418, 2022 WL 17543613, at *2 | *Ace American*, 2 Cal. App. 5th at 170. |

In *St. Paul*, the insureds operated a night club. 521 P.3d 418, 2022 WL 17543613, at *1. Club security personnel hurt a patron as they ousted him from

-11-

the club.  The patron sued.  *Id.*  The insureds tendered the claim to their primary

carrier (Aspen Specialty) and one of their excess carriers (National Union).  *Id.*

They later notified St. Paul, another excess carrier, of the claim.  *Id.*  The carriers

each contributed to settle the claim within their combined limits.  St. Paul then

sued National Union to recover its settlement contribution.  It alleged that National

Union unreasonably failed to settle the case within its own limits, and that it stood

in the insured's shoes as a subrogee to recover the settlement amount above

National Union's limits.  *Id*.  The trial court granted summary judgment to

National Union and dismissed the equitable subrogation claim.  The Nevada

Supreme Court affirmed.  *Id*. at *1–2.

The Nevada Supreme Court explained that the insurers "guaranteed [the

insured's] financial 'security, protection, and peace of mind' when they settled [the

insured's] liability before excess-judgment exposure" within their combined limits.

*Id*. at *2.  "Therefore, [the insured] did not suffer damages which would give rise

to either a bad-faith claim or a breach-of-contract claim," and "St. Paul thus

lack[ed] any claim to assert on behalf of [the insured] against National Union."  *Id*.

In *Aspen Specialty*, the Nevada Supreme Court explicitly applied the rule

from *St. Paul* to bar an equitable subrogation claim by an excess carrier (like North

River) against a primary carrier (like James River).  258 P.3d 287, 2023 WL

3185274, at *2. In short, Nevada doesn't let excess carriers bring failure-to-settle subrogation claims like this one.

On the other hand, California appellate courts have held the exact opposite. *See, e.g., Ace American*, 2 Cal. App. 5th at 183. For example, in *Ace American* the California Court of Appeal concluded that an excess insurer that contributes to a settlement within policy limits can bring an equitable subrogation claim against a primary insurer for an unreasonable failure to settle; the excess insurer "may allege that the primary insurer's breach of the duty to accept reasonable settlement offers resulted in damages in the form of the excess settlement," even if the policyholder suffers no damages. *Id*. That's 180 degrees from *St. Paul* and *Aspen Specialty*.

North River nevertheless tells the Court that there is "no conflict between California and Nevada *binding* authority, which the Court must follow if Nevada law applie[s]." (Opening Br. at 13 (emphasis added).) The trick is in the word "binding." North River says that the Court should ignore *St. Paul* and *Aspen Specialty* because they are "unpublished" and nonbinding. What North River doesn't mention, however, is that under the Nevada Supreme Court's rules its unpublished decisions may be cited for their persuasive value. *See* Nevada Rule of App. Proc. 36. North River also forgets that "federal courts are bound by the pronouncements of the state's highest court on applicable state law." *Ticknor*, 265 F.3d at 939. And North River overlooks that in *Aspen Specialty*, the Nevada

Supreme Court issued a *writ of mandamus* instructing the trial court to enter summary judgment in favor of the primary insurer because *St. Paul* was "clearly controlling law." *Aspen Specialty*, 258 P.3d 287, 2023 WL 3185274, at *2. If the Nevada Supreme Court thinks *St. Paul* "controlling" enough to grant mandamus relief, then this Court should not ignore it as North River suggests.

In short, there's a conflict between Nevada and California law. Under the former this action is baseless, under the latter North River had a chance.

### (b) Nevada is the only state with any interest in having its law apply to this dispute.

Because there is a material conflict between Nevada and California on equitable subrogation, California's government-interest test requires the Court to consider which state's interests would be more significantly impaired by applying the other's law. The answer is clearly Nevada.

Alhambra Place (the defendant in the underlying case and the parties' joint insured) is a Nevada partnership running a Nevada apartment complex. (ER-102 at ¶ 8; *see also* ER-102 at ¶ 8; ER-19; ER-92 at ¶ 5; ER-103 at ¶ 11, ER-104 at ¶ 12.) Further, this case arises out of a Nevada murder inside a Nevada apartment involving Nevada assailants and a Nevada victim, leading to a Nevada wrongful death lawsuit under Nevada law against a Nevada company, that Nevada company's insurance claim to James River, and James River's handling of that Nevada claim. (*See, e.g.*, ER-93 at ¶ 9 (alleging that James River "had a duty to

-14-

defend and indemnify Alhambra Place [dba Shelter Island]," one of the Nevada insureds); SER-24 at 6 n.3 ("Nevada law governed the insured's liability in the underlying litigation.").) Nevada has a strong interest in ensuring that Nevada insureds' claims are handled and settled properly.

By contrast, California's only connection to this case is that the James River policy included "LA Pacific Center Inc." among the Named Insureds. But LA Pacific Center had nothing to do with the underlying case or its resolution. (ER-93 at ¶ 7; ER-92 at ¶ 5; ER-102 at ¶ 8; ER-103–104 at ¶¶ 11–12.)

In sum, California has no interest in this case because the underlying case didn't have anything to do with California. By contrast, Nevada has a strong interest in applying its law to this case, which involves the duties owed by insurance companies to their Nevada insureds arising out of Nevada incidents.

### (c) North River's contrary arguments are based on the false assertion (and contrary to its complaint allegations) that the underlying insured was a California company

North River's arguments about government interest are all based on a fundamental inaccuracy. Here North River tells the Court that it stands in the shoes of a "California insured." (*E.g.*, Opening Br. at 4, 13, 19, 21–22.) Based on that false premise, North River argues that Nevada's interest "extinguished" after the underlying settlement because at that point, the Nevada plaintiffs were made

whole.  (*Id.* at 21.)  But by North River's own allegations, it stands in the shoes of Alhambra Place, a Nevada insured:

- The underlying claim arose out of a murder inside an apartment in Alhambra Place's Shelter Island apartment complex, which is in Nevada.  (ER-94 at ¶¶ 12–13; ER-102 at ¶ 8; ER-104 at ¶¶ 13–14.)

- Only Alhambra Place was a defendant in the wrongful death suit, which was filed in Nevada.  (ER-104 at ¶ 8.)

- North River only alleges that it "stands in Alhambra Place's shoes to recover . . . the $4 million settlement payment on behalf of Alhambra Place to settle the [wrongful death suit] under the doctrine of equitable subrogation."  (ER-98 at ¶ 42.)

Therefore, by North River's own arguments, Nevada's interests are not extinguished, and with the error about Alhambra Place's citizenship corrected, North River's arguments turn back on themselves.

For example, North River cites *Stonewall Surplus Lines Ins. Co. v. Johnson Controls* to argue that California law should apply to this dispute because doing so would have a direct impact on deterring an insurance company's allegedly tortious conduct against a California citizen.  (Opening Br. at 21); *Stonewall*, 14 Cal. App. 4th at 649.  But here, James River's allegedly tortious conduct was against Alhambra Place, a Nevada citizen.  Therefore, by North River's own logic, Nevada

law should apply because Nevada has a stronger interest in making sure that insurers treat Nevada insureds reasonably, and consistent with Nevada's law.

Similarly, North River points to *Medina v. Harco National Insurance Co.* (Opening Br. at 23–24.)  The court held that even though the insureds were Kansas residents so that Kansas "would generally have a greater interest in the litigation," but the underlying litigation occurred in California, and the underlying injury occurred in California.  No. 15-cv-05595, 2016 WL 7647680, at *9 (C.D. Cal. July 29, 2016).  It held that under those circumstances, California's interests would be more greatly impaired than Kansas's by having the other state's law apply.  *Id.*

The same logic applies here with even stronger force: the relevant insured was a Nevada resident, the underlying litigation occurred in Nevada, and Nevada has a stronger interest than California because Nevada was the location of the relevant underlying loss.

Finally, North River argues that California's interest would be more significantly impaired if the Court applies Nevada law than vice versa because California's interests "are more fully developed."  (Opening Br. at 27.)  This argument is absurd.  No case holds that the state that publishes the most cases has a stronger interest in having its law apply.

North River stands in Alhambra Place's shoes to assert a derivative failure-to-settle claim arising out a wrongful death suit with which California had *no*

*connection.* California's interest in having its law apply is zero. Nevada has all the connections and all the interest in seeing its law apply to this dispute.

### 2. Nevada law applies under California's statutory test.

Under California's statutory test, Nevada law still applies. In California, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. An insurance policy is a contract, and Section 1646 applies to construction of insurance policies. Cal. Ins. Code § 22; *See, e.g.*, *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1443 (2007).[4]

*Frontier Oil* explained that the "location of the risk insured" is the place of performance for insurance contracts. *Frontier Oil*, 153 Cal. App. 4th at 1460–61. Where the policy insures against risks in multiple states, the Courts apply a "multiple risk approach" and apply the law of the state of the "principal location of the *particular risk involved*." *Stonewall*, 14 Cal. App. 4th at 646 (emphasis added; citation omitted).

Here, the location of the risk was Alhambra Place's Shelter Island apartment complex in Nevada. The particular risk involved here was the liability of a Nevada

---

[4] *See also Gitano Grp., Inc. v. Kemper Grp.*, 26 Cal. App. 4th 49, 56 n.4 (1994); *James River Ins. Co. v. Medolac Labs.*, 290 F. Supp. 3d 956, 963–64 (C.D. Cal. Feb. 22, 2018).

partnership arising out of its Nevada apartment complex. That's where the murder happened, that's where the underlying suit was filed, and that was the basis for the underlying claim. That there was a different insured that might have a California address doesn't change the result.

Further, because the place of performance is clear, the Court need not consider where the policy was made, accepted, and delivered. Cal Civ. Code § 1646 ("A contract is to be interpreted according to the law and usage of the place where it is to be performed; *or, if it does not indicate a place of performance*, according to the law and usage of the place where it is made.") (emphasis added). North River's arguments that the policy was offered, accepted, or delivered somewhere other than Nevada are irrelevant.

Accordingly, under both the government-interest test and the statutory test, Nevada law applies to this case.

**B.      The District Court correctly predicted that Nevada would hold that North River can't state a claim for relief.**

Nevada recognizes a claim for equitable subrogation when one party involuntarily pays the obligation or loss of another for which a third party is found to bear responsibility. *See AT & T Techs., Inc. v. Reid*, 109 Nev. 592, 595-96 (1993); *see also In re Fontainebleau Las Vegas Holdings*, 289 P.3d 1199, 1209 n.8 (Nev. 2012) (en banc). The equitable subrogation claim is derivative; there needs

to be an independent underlying basis on which the subrogor could have recovered. *Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368 (2011).

There is no published Nevada case addressing whether or under what circumstances equitable subrogation applies between excess and primary carriers who both contributed to a settlement to resolve claims against their mutual insured. *See, e.g.*, *Scottsdale Ins. Co. v. Liberty Mut. Ins. Co.*, 130 Nev. 1241, 2014 WL 7188790, at *1 (Nev. 2014) (declining certified question asking whether Nevada recognizes a claim for equitable subrogation by an excess carrier against a primary carrier). So the Court has to predict how the Nevada Supreme Court would decide the issue. *Murray v. BEJ Mins., LLC*, 924 F.3d 1070, 1071 (9th Cir. 2019).

The prediction is straightforward. In December 2022 and April 2023, the Nevada Supreme Court issued two decisions addressing insurer versus insurer equitable subrogation claims. *St. Paul*, 521 P.3d 418, 2022 WL 17543613; *Aspen Specialty*, 528 P.3d 287, 2023 WL 3185274.

*St. Paul* involved an equitable subrogation claim between equal-level carriers (both excess) and *Aspen Specialty* involved an excess carrier's equitable subrogation claim against a primary carrier. In both cases, the Nevada Supreme Court decided that where the underlying case settled within the combined policy limits, the insured did not suffer any damages, and there is thus no underlying claim for the excess carrier to be subrogated to, so the excess carrier has no claim

for equitable subrogation. *St. Paul*, 521 P.3d 418, 2022 WL 17543613, at \*2;

*Aspen Specialty*, 528 P.3d 287, 2023 WL 3185274, at \*2.

What's more, the Nevada Supreme Court issued these decisions *after* a

Nevada federal district court predicted (incorrectly, as it turned out) that the

Nevada Supreme Court would allow an excess insurer's equitable subrogation

claim even if the case settled within the combined limits. *See Zurich Am. Ins. Co.*

*v. Aspen Specialty Ins. Co.*, No. 20-cv-01374, 2021 WL 3489713, at \*2, \*4–5 (D.

Nev. Aug. 6, 2021).

The issue in this case is the same as that in *St. Paul* and *Aspen Specialty*.

North River's claim, if any, is derivative of Alhambra Place's claim.  Even if North

River's allegations that there were earlier opportunities to settle the underlying

case for less than $1 million are deemed true, Alhambra Place doesn't have a claim

for bad faith failure to settle because it didn't suffer any damages: the underlying

case settled within the combined policy limits.  North River correctly alleges that

the James River policy limit was $1 million, the North River excess policy limit

was $10 million, so the combined limit was $11 million, and the underlying case

settled within the combined limit for $5 million without contribution from

Alhambra Place.  (Er-93, 96 at ¶¶ 7, 10, 29–30.)  Under these circumstances, James

River and North River guaranteed their insureds financial security, protection, and

peace of mind by settling the case before any excess-judgment exposure.  So

Alhambra Place does not have a claim for bad faith failure to settle, and North River has nothing to be subrogated to.

In short, the best prediction about how the Nevada Supreme Court would decide this case is that it would decide it the same way it decided *St. Paul* and *Aspen Specialty:* North River can't state a claim for equitable subrogation because the underlying claim settled within the combined policy limits and Alhambra Place didn't suffer any damages.

## C.    North River can't escape *St. Paul* and *Aspen Specialty.*

North River can't plead around the critical failure in its case. So instead, it throws out a bunch of arguments that all boil down to the same thing: The Court should conclude that the Nevada Supreme Court got Nevada law wrong.

First, North River says the Court should ignore *St. Paul* and *Aspen Specialty*. As shown above, it can't properly do so. But even if the Court could ignore *St. Paul* or *Aspen Specialty*, it wouldn't make sense to do so. The task is to predict how the Nevada Supreme Court would address the issue. The Nevada Supreme Court answered the exact question presented here twice within the past thirteen months, it answered the question the same way both times, and it did so shortly after a Nevada federal district court predicted the opposite outcome. There's no stronger evidence how the Nevada Supreme Court would decide the issue.

North River also tries to distinguish *St. Paul* and *Aspen Specialty* because North River didn't pay as a volunteer. But no one has argued that North River was a volunteer and the voluntary-payment defense wasn't addressed in either decision.

North River then argues the Court can refer to California law because other Nevada insurance cases have borrowed from California law on other issues. (Opening Br. at 35.) But so what? On the question that matters here, the Nevada Supreme Court ruled that Nevada will *not* follow California: settlement within limits means no damages to the underlying insured, which means no equitable subrogation for the excess insurer.

Similarly, North River argues that this Court should assume that Nevada would follow the California rule because other states like Arizona, Hawaii, and Oregon have done so. Again, so what? Nevada is a sovereign state and it need not follow California, Arizona, or any other state's equitable subrogation rules. And the Nevada Supreme Court expressly declined to do so. Besides, Nevada is not alone in rejecting excess carriers' attempts to take premium for excess coverage, but recover any losses by leaning on primary carriers. *See, e.g.*, *Teigen v. Jelco of Wisconsin, Inc.*, 367 N.W.2d 806, 811 (Wis. 1985) (excess insurer cannot bring an equitable subrogation claim against a primary carrier when their mutual insured suffers no loss); *Fed. Ins. Co. v. Travelers Cas. & Surety Co.*, 843 So. 2d 140, 145

(Ala. 2002) ("equitable subrogation is not available to an excess insurer whose insured is subject to no . . . final judgment" because there is no underlying claim).

Next, North River attacks a straw-man:  It says that *St. Paul*, *Aspen Specialty*, and the district court's decision here all mean that there could never be equitable subrogation between insurers at all.  That's obviously wrong.  The most obvious example is when an insurer pays *more* than its policy limits to settle a claim to protect its insured, in which case the overpaying insurer probably would have an equitable subrogation claim (as long as the other claim elements are satisfied).

Finally, pointing to the dissent in *St. Paul*, North River argues that the Nevada Supreme Court got Nevada law wrong; that the Nevada Supreme Court would not "adopt" its own holdings in *St. Paul* or *Aspen Specialty* because those decisions misapplied Nevada law.  North River asks the Court to look to three Nevada cases discussed in the *St. Paul* dissent to predict the outcome of this case. (*Id.* at 43–46.)  But the Nevada Supreme Court considered those decisions, and the majority decided to go a different way: in the insurer versus insurer context, there is no equitable subrogation claim if the underlying case settled within the combined limits.  James River submits that the best place to look to predict how the Nevada Supreme Court will apply of Nevada law is the majority opinion.

Finally, North River argues that the Nevada Supreme Court would ignore or reverse *St. Paul* and *Aspen* because one of the dissenting justices (Justice Cadish) is now the chief justice. (*See* Opening Br. at 46 n.7.) In other words, now that Justice Cadish is chief justice, her colleagues, who did not adopt her view in *St. Paul* (en banc), would issue a different opinion. That is shockingly cynical. Regardless, James River is unaware of any authority that allows a federal court to predict how a state supreme court would decide an issue based on the identity of the chief justice.

## D.    North River can't state a claim under California law either

Much of North River's brief is spent arguing that California law should apply to this dispute. But there's a problem: North River didn't state a claim under California law, either. James River pointed this out in its dismissal briefing below, and North River didn't respond, either below or in its opening appellate brief.

Under California law, one clear and essential element of an equitable subrogation claim is equitable superiority. The plaintiff must occupy the equitable high ground such that justice requires the entire loss to be shifted to the defendant. *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1292 (1998). To establish a superior position, North River to has to show more than that James River unreasonably failed to settle and that North River did "nothing wrong." *Capitol Specialty Ins. Corp. v. GEICO General Ins. Co.*, 562 F. Supp. 3d

563, 573 (C.D. Cal. 2021). It must show that James River "is guilty of some wrongful conduct which makes [its] equity inferior[.]" *Id.* (*quoting State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A.*, 143 Cal. App. 4th 1098, 1112 (2006)).

North River skips this bit of California law. Probably because it destroys its case. North River carefully explains how its complaint allegations met the equitable subrogation elements, with citations to the complaint (but not to California law). But North River omits the well-established requirement that the defendant's "equitable position is inferior to that of the [plaintiff]." *Fireman's Fund*, 65 Cal. App. 4th at 1292; *see also, e.g.*, *Pat. Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506, 509 (1967) (same); *Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc.*, 52 Cal. App. 4th 553, 555 (1997) (same).

North River's complaint doesn't allege anything to suggest it is in a better equitable position than James River, and North River hasn't ever said it could amend it complaint to do so. James River's motion to dismiss raised this. North River's opposition ignored it. (*Compare* Opening Br. at 30 *with* SER-43 at n.4 (arguing that North River failed to allege a superior equitable position); *see also* SER-11–12 at 9–10 (reiterating argument that North failed to allege a superior equitable position or argue that it could amend to do so.).

North River can't fix this defect because there is nothing unfair about North River contributing part of its policy limits to settle this case against its insured,

from whom North River accepted a premium in exchange for a promise to defend and indemnify.  This is an independent basis to affirm the district court's opinion.

## VI.    CONCLUSION

Nevada law applies to this dispute, and the best prediction of how the Nevada Supreme Court would address whether North River has a claim is how it addressed the exact same issue twice within the past thirteen months.  Because the underlying claim settled within the combined policy limits, the insured was not damaged, and there is no claim for North River to be subrogated to.  Nor can North River state a claim under California law because it has not (and cannot) allege that its equitable position is superior to James River's.  Accordingly, the Court should affirm the district court's order dismissing North River's complaint with prejudice.


Dated: February 5, 2023       SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By    _____*s/ Jeffrey V. Commisso*_____
JOHN T. BROOKS
JEFFREY V. COMMISSO
BENJAMIN D. BROOKS
Attorneys for Defendant and Appellee
James River Insurance Company

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that

the attached brief complies with the typeface and type style requirements of

Federal Rules of Appellate Procedure 32(a)(5) and (6).  I also certify that,

according to the word processing program with which the brief was prepared, the

brief contains 6,265 words, excluding the items exempted by Federal Rule of

Appellate Procedure 32(f), and that it therefore complies with the word limit of

Ninth Circuit Rule 32-1(a).

Dated: February 5, 2023     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By         _*s/ Jeffrey V. Commisso*_

JOHN T. BROOKS
JEFFREY V. COMMISSO
BENJAMIN D. BROOKS
Attorneys for Defendant and Appellee
James River Insurance Company